UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO.  25-cr- |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| JENNIFER MAY, | : | |
| | : | FORFEITURE: 18 U.S.C. § 981(a)(1)(C), |
| Defendant. | : | 28 U.S.C. § 2461(c), 21 U.S.C. § 853(p) |

## STATEMENT OF OFFENSE

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully submits the following Statement of Offense in the above-captioned case.

The parties stipulate to the following facts.

1. Jennifer May resided in Washington, D.C.

2. May was the sole owner of Next Level Partners, LLC ("NLP") a consulting firm based in Washington, D.C., which specialized in assisting congressional and presidential campaigns in complying with regulations promulgated by the Federal Election Commission and managing their accounts payable function for them.

3. May maintained several accounts, both personally and for NLP, at Bank of America.

4. May also maintained personal accounts at BlockFi and Coinbase, two cryptocurrency exchanges.

5. In response to the COVID-19 pandemic, the SBA offered certain entities, including small business owners, Economic Injury Disaster Loans ("EIDL"). These loans were provided directly from the SBA and were low-interest, fixed-rate, long-term loans. EIDL loan

proceeds could be used for working capital to make regular payments for operating expenses, including payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt.

6. Prior to the application at issue, May had previously applied for and received $499,000 in EIDL funds on behalf of NLP.

7. On October 21, 2021, May applied for a second modification to the original loan amount, asking for an additional $1,500,000 in funds for NLP. In doing so, May agreed to be bound by the terms of the Amended Loan Authorization and Agreement, under which she represented that she would "use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter…" for the entity on behalf of which she applied, NLP.

8. On November 8, 2021, with NLP's EIDL second modification application still pending, May sent an email to an SBA customer service representative in connection with this application asking "Is there anything I need to do.? I thought the loan would have been distributed by now. Please let me know. I need to make payroll."

9. Yet at the time of making these representations in her application to and subsequent communications with the SBA, May did not intend to use the second modification to her original EIDL application for working capital and payroll purposes. Rather, May initially sought to use these proceeds to speculate in cryptocurrencies she had been researching in the months and weeks leading up to her application, including one token in particular – Tomb, which is traded on the Fantom Blockchain. Moreover, by submitting the application and emailing the SBA representative, both of which contained her false representations, May caused interstate wire transmissions.

10. On November 24, 2021, the SBA disbursed $1,500,000 into NLP's Bank of America account controlled by May. On that same day, May transferred $775,000 from NLP's Bank of America Account and sent to it to her own personal checking account.

11. In addition, also on November 24, 2021, May transferred another $100,000 – broken up into four tranches of $25,000 – through four separate accounts she controlled, many of which had little to no activity prior to the transfers, to that same personal checking account mentioned *supra* at ¶ 10.

12. On that same day – November 24, 2021 – May transferred $75,000 in EIDL proceeds from her personal checking account and deposited it into her Coinbase account, after which, through a series of transactions involving different cryptocurrencies, she purchased a variety of tokens, including Tomb.

13. Also on November 24, 2021, May transferred $750,000 into her BlockFi account, through which, again, she conducted a series of cryptocurrency transactions to obtain Tomb on the Fantom blockchain.

14. May ultimately sustained losses of approximately $446,296.93 in her speculation on Tomb and other cryptocurrencies. In March 2022, May ultimately transferred out what remained of her EIDL funds in BlockFi, consisting of one tranche of $133,639.37 and another of $161,625.00, to a separate Bank of America account. She then used the remaining EIDL proceeds for the purpose of consummating a purchase of a restaurant / bar / childcare space known as The Lane at Ivy City in Northeast Washington, D.C. The Lane at Ivy City was wholly and completely operationally unrelated to NLP. Indeed, in and around this time, May communicated with another individual that she was using EIDL funds for NLP not for that

business (NLP) as promised in her applications and modifications, but to fund this venture (The Lane).

15. Further, approximately $81,492.96 in additional EIDL funds which remained in her NLP Bank of America account were also transferred to an escrow account held by a Virginia-based title and settlement company to fund the purchase of an unrelated commercial real estate property in Middleburg, Virginia. The purpose of this purchase was for May and a business partner to find a location to house computer hardware that would facilitate the mining of cryptocurrency. This venture was completely operationally unrelated to NLP, the entity for which May had applied for EIDL funds in October 2021.

16. May did not repay the EIDL as required, and her EIDL became delinquent.

17. On January 17, 2023, SBA representatives began attempting to contact May regarding her delinquent EIDL. These attempts continued every few days, sometimes occurring multiple days in a row, until contact was finally made with May on April 5, 2023. May informed the representative that she completed a payment via the portal while on the phone with the representative, in the amount of $9,853, and would make another payment soon. When she asked about hardship deferment options, May was told that she could not be more than 60 days past due to qualify. Following this interaction, the loan continued in delinquency and SBA representatives attempted to contact May every few days. On November 6, 2023, a representative successfully reached May and May told the representative that she had no money to pay the EIDL.

18. Overall, within six days of the EIDL funds being disbursed into NLP's Bank of America account, approximately $1,194,200.00 was transferred out of it by May to other, unrelated accounts which she herself personally controlled. (Specifically, the beginning balance

of NLP's Bank of America account on November 1, 2021 was $11,229.12 and, in addition to the EIDL funds, there were only $13,457.87 in additional funds deposited into that account during the month of November.)

19.     The proceeds from May's scheme that she obtained have been dissipated by her and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY
N.Y. Bar No. 1387455.

By:    _____
       WILL HART
       D.C. Bar No. 1029325
       Assistant United States Attorney
       Fraud, Public Corruption & Civil Rights Section
       United States Attorney's Office
       for the District of Columbia
       601 D Street, N.W. | Washington, D.C. 20530
       (202) 252-7887 | william.hart@usdoj.gov

**DEFENDANT'S ACKNOWLEDGMENT**

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime that is charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

I read every word of this Statement of Offense. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: July 29, 2025

JENNIFER MAY
Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read this Statement of Offense and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of Offense as true and accurate.

Date: July 29, 2025

Phillip Andonian
Counsel for Jennifer May